**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Billy Dwight SMITH, Jr., Defendant–
Appellant.**

No. 01–6201.

United States Court of Appeals,
Tenth Circuit.

April 12, 2002.

Before SEYMOUR, HENRY, and BRISCOE, Circuit Judges.

## ORDER AND JUDGMENT*

HENRY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to honor appellant's request for decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f). The case is, therefore, ordered submitted without oral argument.

Billy Dwight Smith, Jr. appeals (1) the denial of his motion to suppress evidence; (2) the district court's decision not to instruct the jury that the government must prove beyond a reasonable doubt that the possession of the firearms had some actual or substantial effect on interstate commerce; and (3) his subsequent sentence of 210 months' imprisonment as enhanced by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). Our jurisdiction is pursuant to 28 U.S.C. § 1291, and, for the reasons set forth below, we affirm the

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

denial of the motion to suppress and affirm Mr. Smith's conviction and sentence.

## I. BACKGROUND

On October 5, 1999, Police Officer Charles Ramsey went to 235 Southeast 52nd Street in Oklahoma City in response to a report of shots being fired at that address. When Officer Ramsey arrived at the residence, which was sometime after dark,[1] he found several people standing in the front yard of the residence, including Bonnie Brawdy. Ms. Brawdy told Officer Ramsey that Mr. Smith had been shooting firearms in the driveway. Officer Ramsey then placed Mr. Smith into the officer's patrol car, noticing that Mr. Smith appeared to be intoxicated. Officer Ramsey then spoke to Ms. Brawdy and Lannie Coil, both of whom stated that Mr. Smith had come to the residence expressing anger about his sister living with alleged drug dealers. Mr. Smith had proceeded to fire, from the driveway, a number of rounds from a pistol followed by one round from a shotgun.

Officer Ramsey asked where the guns were located, and Ms. Brawdy and Mr. Coil stated that Mr. Smith had placed them inside a pickup truck parked in the driveway of the residence. Using a flashlight, Officer Ramsey looked inside the pickup truck and observed a shotgun in the front seat. He also observed a black leather coat, which the witnesses had said the defendant was wearing when he fired the shots. Officer Ramsey opened the door of the truck and removed the shotgun. He then looked through the leather coat and found a .380 pistol in one of the coat's pockets, which he seized as evidence of a crime. At trial Mr. Coil, Ms. Brawdy, and another witness all testified that they saw Mr. Smith in possession of firearms on October 5, 1999.

The government also presented the testimony of Raymond Parker, a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, who testified that both the pistol and the shotgun functioned as firearms and that both were manufactured outside the state of Oklahoma. Mr. Smith stipulated that he had been convicted of a felony prior to October 5, 1999.

On April 4, 2000, a grand jury in the Western District of Oklahoma returned a one-count indictment against the Mr. Smith, alleging that he had possessed firearms after a previous conviction for a felony offense. Mr. Smith moved to suppress evidence of the firearms, alleging that they were unlawfully seized. The district court denied the motion after a hearing and a jury convicted Mr. Smith.

At sentencing, the government maintained that the defendant should be sentenced as an Armed Career Criminal pursuant to the ACCA. Despite Mr. Smith's objection, the district court agreed and sentenced him to 210 months' imprisonment. Mr. Smith timely filed a notice of his intent to appeal. For the reasons set forth below, we affirm the district court's decision.

## II. DISCUSSION

### A. Motion to Suppress

Mr. Smith first challenges the denial of his motion to suppress the firearms. He contends that his arrest was without a warrant and without probable cause, and thus any search that followed was unlawful.

■ When we review a district court's denial of a motion to suppress, we accept

---

1. At trial, Officer Ramsey stated that the time of his arrival was within five minutes of 8:19 p.m., the time at which the police received the call of shots fired.

"the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government." *United States v. Basham,* 268 F.3d 1199, 1203 (10th Cir.2001). The determination of reasonableness under the Fourth Amendment is a question of law, however, and is reviewed de novo under the totality of the circumstances. *See id.*

The government maintains that grounds justifying both the arrest and the search existed independently of each other, and as such, no factual nexus between the arrest and search was required. In fact, the district court considered the motion assuming the arrest was unlawful when it denied the motion to suppress.

■ We are persuaded by the government's arguments. As the district court noted:

> [t]he officer was responding to a call about gunfire; when he arrived at the residence witnesses advised him that [Mr. Smith] had been shooting guns and had put the weapons in a pickup; and when he approached the vehicle he observed the shotgun in plain view on the passenger seat, which corroborated the witnesses' statements.

Rec. vol. 1, doc. 19, at 4 n. 3 (Dist. Ct. Order, filed May 5, 2000). The discovery of the shotgun, combined with the information provided by Ms. Brawdy and Mr. Coil, furnished Officer Ramsey with probable cause to search the vehicle for evidence of a crime. *See Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (noting that under plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant"); *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."); *United States v. Jimenez,* 864 F.2d 686, 689–90 (10th Cir.1988) (affirming district court's finding of probable cause that a shotgun was associated with criminal activity because a police officer had observed that the gun did not have a normal-length barrel). We thus affirm the denial of the motion to dismiss.

**B.  Jury Instruction**

■ Next, Mr. Smith challenges the district court's decision not to instruct the jury that Mr. Smith's possession of the firearms must have had an actual or substantial effect on interstate commerce. In advancing this argument, Mr. Smith relies upon *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). He claims that mere possession of firearms does not affect interstate commerce and is therefore insufficient to meet the federal jurisdictional requirement. *See* Aplt's. Br. at 14–15. This circuit's case law has resolved this issue and now forecloses Mr. Smith's challenge. *See e.g., United States v. Dorris,* 236 F.3d 582, 586 (10th Cir.2000) (rejecting challenge to the power of Congress to regulate activities substantially affecting interstate commerce, namely § 922(g)(1)'s regulation of the possession of firearms moved in interstate commerce).

**C.  Sentence Enhancement**

■ Mr. Smith next challenges the application of the ACCA enhancement in the calculation of his criminal history category. *See* 18 U.S.C. § 924(e). Specifically, he challenges the characterization of a prior

conviction for second degree burglary as a crime of violence.

We review de novo sentence enhancements imposed under the ACCA, *see United States v. Bull*, 182 F.3d 1216, 1217–18 (10th Cir.1999), and we hold that Mr. Smith has the three requisite convictions for application of the ACCA.

> Under the USSG:
>
> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) *is burglary* ....

18 U.S.C. § 924(e)(2)(B) (emphasis added).

■ Under the analytic approach mapped out in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the sentencing court, when applying § 924(e), must "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143 (footnote omitted). In *Taylor*, the Supreme Court defined burglary for purposes of § 924(e) as "any crime ... having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. 2143. In comparison, the Oklahoma burglary statute under which Mr. Smith was convicted employs a broader definition of burglary, because it applies to the unlawful entry into more than simply a building or commercial structure:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with the intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okla. Stat. tit. 21, § 1435 (West 1983). Because the Oklahoma statute is broader than the basic elements outlined in *Taylor*, we are authorized to look to the charging documents in order to determine if the criminal act satisfies these basic elements. *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143 (outlining inquiry as to state statute's definition of "burglary" under § 924(e)).

According to the Information, Mr. Smith was charged with having:

> [a]cted jointly, willfully, and knowingly; broke and entered a building known as the Quick Shop located at 5220 South I–35, Oklahoma City, ... with the [intent] to steal by stealth and fraud and without the knowledge and consent of the owner.

Rec. vol. 4, at 138 (transcript of sentencing hearing, dated May 25, 2001). Mr. Smith attempts to distinguish between his acting jointly and his personal participation in the burglary.

■ We agree with the government that the ACCA does not distinguish between principals and accessories. The Information charged Mr. Smith with the requisite elements to satisfy *Taylor*'s generic burglary definition and Mr. Smith pleaded guilty to this charge. We hold that the use of this burglary conviction to enhance his sentence under ACCA was proper.

### III. CONCLUSION

For the reasons stated above, we AFFIRM Mr. Smith's conviction.