FILED
United States Court of Appeals
Tenth Circuit

April 23, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PEDRO C. GARCIA,

    Defendant - Appellant.

No. 17-3266
(D.C. Nos. 6:17-CV-01011-JTM &
6:12-CR-10089-JTM-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

In 2013, a jury convicted Pedro C. Garcia of conspiring with other members of a

criminal gang to violate the Racketeer Influenced and Corrupt Organizations Act (RICO);

committing various violent crimes, including murder in violation of Kansas law, in aid of

racketeering; and two counts of possessing and brandishing or discharging a firearm in

furtherance of crimes of violence (murder and aggravated robbery), in violation of

18 U.S.C. § 924(c)(1)(A).  In 2014, the district court sentenced him to life imprisonment

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

plus a mandatory, consecutive term of 32 years for the § 924(c)(1)(A) violations.  This

court affirmed, *see United States v. Garcia*, 793 F.3d 1194, 1199 (10th Cir. 2015), and

the Supreme Court denied review, *Garcia v. United States*, 136 S. Ct. 860 (2016).

Within one year of the date on which Garcia's conviction became final, he filed a

pro se motion for postconviction relief under 28 U.S.C. § 2255.[1]  The district court

denied the motion and Garcia's motion to alter or amend its judgment, but it granted a

certificate of appealability (COA) on one issue—whether "the court's murder instruction

[relating to Garcia's Count 6 conviction] was erroneous under *Johnson* [*v. United States*,

135 S. Ct. 2551 (2015)]" (*Johnson II*).  R., Vol. II at 257.  Still pro se, Garcia has filed a

combined COA application and opening brief, seeking to expand the COA to include two

other issues:  (1) the district erred in determining that his "challenge as to Count 9

[regarding his § 924(c)(1)(A) conviction] (and Count 6) was procedurally defaulted

because that challenge was based on *Johnson [II]*"; and (2) the denial of relief on his

"due process claim that the prosecutor committed misconduct is for[e]closed."  Opening

---

[1] Section 2255(f) provides a one-year limitations period for § 2255 motions.  One way to measure that period is from "the date on which the judgment of conviction becam[e] final."  § 2255(f)(1).  Garcia's conviction became final when the Supreme Court denied his petition for a writ of certiorari on January 11, 2016.  *See United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006) ("In the context of the one-year limitation period for filing a § 2255 motion, a criminal conviction becomes final when the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires.").  Garcia's § 2255 motion bears a district-court file stamp dated January 13, 2017, which is beyond the (f)(1) period, but under the prison-mailbox rule, we conclude that his motion was timely under § 2255(f)(1).  *See Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005) (explaining parameter of prison-mailbox rule).

Br. at 2 (most capitalization omitted). He also seeks leave to proceed without prepayment of costs and fees (IFP). Construing Garcia's pro se filings liberally, but without acting as his advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we (1) affirm the denial of relief on the Count 6 murder-instruction issue; (2) grant a COA on his Count 9 claim, reverse the denial of relief on that claim, and remand for further proceedings; and (3) deny a COA on his prosecutorial-misconduct claim. We also grant IFP.

## I. **Issue on which COA was granted**

### A. **District court proceedings concerning Count 6**

Count 6 of the indictment charged Garcia with possessing and discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). The district court instructed the jury that the predicate crime charged in Count 6, first-degree murder in violation of Kan. Stat. Ann. § 21-5402, "is a crime of violence." Supp. R., Vol. 1 at 59. For purposes of § 924(c)(1)(A), a "crime of violence" is "an offense that is a felony" that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3). We refer to § 924(c)(3)(A) as the "elements" clause (Garcia calls it the "force" clause), and to § 924(c)(3)(B) as the "residual clause."

While Garcia's direct appeal was pending, the Supreme Court decided *Johnson II*, holding unconstitutionally vague a similar residual clause in the definition of "violent

3

felony" in the Armed Career Criminal Act (ACCA)—"any crime punishable by imprisonment for a term exceeding one year . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). 135 S. Ct. at 2557.

In his § 2255 motion, Garcia's entire argument regarding the Count 6 instruction was: "Per the holding in *Johnson* murder is not categorically a 'crime of violence' within the meaning of § 924(c)(3)(B) since physical force is not required to be held accountable for the offense of murder." R., Vol. II at 141. The district court decided the claim was procedurally defaulted because Garcia did not present good cause for failing to raise it on direct appeal. In the alternative, the court determined the claim had no merit. The court concluded Garcia failed to show how the crime charged was not a crime of violence because Kan. Stat. Ann. § 21-5402(a)(1) "defines murder in the first degree as a killing of a human being intentionally and with premeditation," and the jury had returned a special verdict finding Garcia had committed first degree murder. R., Vol. II at 211.

## B.  **Standard of review**

The district court did not hold an evidentiary hearing where it made findings, so our review is de novo. *See United States v. Copeland*, 921 F.3d 1233, 1242 (10th Cir. 2019).

## C.  **Discussion**

In his opening appellate brief, Garcia contends that Kansas first degree murder cannot qualify as a crime of violence under § 924(c)(3)'s residual clause because that clause is unconstitutionally vague under the reasoning of *Johnson II*. He also argues the

4

murder instruction was erroneous because the term "physical force" as used in § 924(c)(3)'s elements clause means "violent force" under the reasoning of *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*). In *Johnson I*, the Supreme Court construed the ACCA's elements clause, § 924(e)(2)(B)(i), which defines a "violent felony" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Court held that in defining "violent felony," "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

Relying on *Johnson I*'s holding, Garcia argues that first degree murder under Kan. Stat. Ann. § 21-5402(a) does not require any "violent force" at all because it can be committed by poisoning, and under controlling case law at the time of his sentencing, murder by poisoning did not require violent physical force. In his reply brief, Garcia clarifies that the "essence" of his claim concerning Count 6 is that his murder conviction could only qualify as a crime of violence under the residual clause because it does not require the use of physical force necessary to satisfy the elements clause, and the residual clause is unconstitutionally vague under *Johnson II* and our decision in *United States v. Salas*, 889 F.3d 681 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2773 (2019).[2] In *Salas*, we held that § 924(c)(3)'s residual clause is unconstitutional under *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-16 (2018), where the Supreme Court extended *Johnson II*'s

---

[2] We decided *Salas* after Garcia filed his opening brief in this appeal.

5

reasoning to hold that a similarly worded clause in the definition of "violent felony" in 18 U.S.C. § 16(b) was unconstitutionally vague. *Salas*, 889 F.3d at 684–86.

The government advances a number of procedural reasons why we should not entertain the merits of this argument, but we need not sort those out because none are jurisdictional and it's clear the argument loses on the merits. *See Brown v. Sirmons*, 515 F.3d 1072, 1092-93 (10th Cir. 2008) (holding that for efficiency, we can avoid questions of procedural bar if it is easier to rule on the merits); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271 (10th Cir. 2000) (noting this court's discretion to depart from general rule that we do not consider matters not raised or argued in the district court "[w]here the issue is purely a matter of law and its proper resolution is certain" (ellipses and internal quotation marks omitted)).

Our merits analysis proceeds from the observation that in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the Supreme Court confirmed what *Salas* held—that like the ACCA residual clause at issue in *Johnson II*, § 924(c)(3)'s residual clause, "§ 924(c)(3)(B)[,] is unconstitutionally vague."[3]  And we have said that "in striking down § 924(c)(3)(B) as void for vagueness, *Davis* created a new constitutional rule," *United States v. Bowen*, 936 F.3d 1091, 1098 (10th Cir. 2019), that is "retroactively applicable to cases on collateral review," *id.* at 1100.  Further, we will assume, for the sake of argument, that Garcia's § 924(c)(1)(A) conviction rested on the residual clause. *See Bowen*, 936 F.3d at 1108-09 (examining whether conviction "rested on § 924(c)(3)'s

---

[3] The Supreme Court decided *Davis* after the parties in this appeal completed their briefing.

6

residual clause" in order to determine if district court's reliance on that clause was harmless in light of fact that conviction did not categorically qualify under elements clause). Based on that assumption, we conclude that the district court erred in relying on the residual clause because Garcia's "conviction was imposed under an invalid—indeed, unconstitutional—legal theory, and that [he] was, therefore, convicted in violation of the Constitution." *Id.* at 1108 (brackets and internal quotation marks omitted).

We now must determine if the error in the jury instruction was harmless by considering whether it "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 1109 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). *Davis* harmless-error review requires us to look at whether Garcia's murder conviction would qualify as a crime of violence under the elements clause based on the current state of the law, not on what the law was at the time of sentencing. *See United States v. Lewis*, 904 F.3d 867, 873 (10th Cir. 2018) ("We apply current law . . . because *Johnson [II]* harmless error review goes to the question of remedies . . . .").

The Kansas first-degree-murder statute provides: "(a) Murder in the first degree is the killing of a human being committed: (1) Intentionally, and with premeditation; or (2) in the commission of, attempt to commit, or flight from any inherently dangerous felony." Kan. Stat. Ann. § 21-5402(a).[4] Garcia argues this statute does not qualify as a

---

[4] The parties debate whether § 21-5402(a) is a divisible statute and whether we should apply the categorical or the modified-categorical approach to determine if Garcia's murder conviction qualifies as a crime of violence under § 924(c)(3)'s elements clause. We need not resolve this debate because Garcia's argument fails under either approach. But we note (without deciding) that the statute itself strongly indicates it *is not* divisible. *See* § 21-5402(d) ("Murder in the first degree as defined in subsection (a)(2) is

7

crime of violence under the elements clause in § 924(c)(3)(A) because first-degree

murder can be accomplished by poisoning, which does not require the use of violent

physical force.

We disagree. In two recent cases we have definitively rejected the argument that

poisoning does not require the use of violent physical force. In *United States v.*

*Ontiveros*, 875 F.3d 533, 536-38 (10th Cir. 2017), we explained that the Supreme Court's

decision in *United States v. Castleman*, 572 U.S. 157 (2014), fatally undermined

contrary, earlier Tenth Circuit precedent on this point, including a case Garcia relies on

here, *United States v. Rodriguez-Enriquez*, 518 F.3d 1191 (10th Cir. 2008). *See also*

*United States v. McCranie*, 889 F.3d 677, 679 (10th Cir. 2018) (recognizing that

*Ontiveros* "overruled" *Rodriguez-Enriquez* based on *Castleman*), *cert. denied*, 139 S. Ct.

1260 (2019). Although *Ontiveros* concerned whether the "use of physical force"

rendered an offense a crime of violence under U.S.S.G. § 4B1.1(a), *see* 875 F.3d at 535,

we extended *Ontiveros*'s reasoning to § 924(c)(3)(A) in *United States v.*

*Melgar-Cabrera*, 892 F.3d 1053, 1066 (10th Cir.), *cert. denied*, 139 S. Ct. 494 (2018).

To the extent Garcia relies on dictum in *Rummel v. Estelle*, 445 U.S. 263 (1980), it is not

controlling in light of *Castleman*.[5]

---

an alternative method of proving murder in the first degree and is not a separate crime
from murder in the first degree as defined in subsection (a)(1)."); *see also Mathis v.*
*United States*, 136 S. Ct. 2243, 2256 (2016) ("[A] statute may itself identify which things
must be charged (and so are elements) and which need not be (and so are means).").

[5] The *Rummel* dictum Garcia points to is a comment that "Caesar's death at the
hands of Brutus and his fellow conspirators was undoubtedly violent; the death of
Hamlet's father at the hands of his brother, Claudius, *by poison*, was not." *Rummel*,

8

Because Garcia has failed to show that first-degree murder in violation of Kan. Stat. Ann. § 5402(a) is not a crime of violence as defined in § 924(c)(3)(A)'s elements clause, any error by the district court in relying on § 924(c)(3)(B)'s residual clause, recognized as unconstitutionally vague in *Davis* and *Salas*, was harmless under *Brecht*. We therefore affirm the district court's denial of § 2255 relief on Garcia's jury-instruction issue.

## II. **Issues on which COA was not granted**

Garcia seeks a COA on two additional issues. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal final order in a § 2255 proceeding). Those issues are whether (1) his "challenge as to Count 9 (and Count 6) was procedurally defaulted because that challenge was based on *Johnson [II]*"; and (2) his "due process claim that the prosecutor committed misconduct is for[e]closed." Opening Br. at 2 (typeface altered).

A COA may issue "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). The district court held that these two issues were procedurally defaulted. Therefore, to obtain a COA, Garcia must show "that jurists of reason would find it debatable whether [those grounds] state[] a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The COA inquiry . . . is not coextensive with a merits analysis," and should be conducted "without full

---

445 U.S. at 282 n.27 (emphasis added). The majority opinion made this comment in rejecting the dissenting opinion's view that there are objective standards for imposing more severe penalties if a crime involves violence.

9

consideration of the factual or legal bases adduced in support of the claims." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted).

A. ***Johnson II* challenge to Count 9**[6]

The jury convicted Garcia of Count 9, possessing and brandishing a firearm in furtherance of a crime of violence in violation of § 924(c)(1)(A). Count 9 charged that Garcia

> did knowingly possess firearms and brandish firearms, in furtherance of a crime of violence for which [he] may be prosecuted in a court of the United States, to wit: 18 U.S.C. §1951 and 18 U.S.C. §1959, referencing Aggravated Robbery, in violation of Kan. Stat. Ann. §21-5420(b)(1) (formerly §21-3427).
>
> In violation of Title 18, United States Code, 924(c)(1)(A) and Section 2.

R., Vol. II at 61-62.[7] The district court instructed the jury that to convict Garcia on Count 9, it had to find he "committed the crime of *aggravated robbery* as charged in count 9 of the indictment, which is a crime of violence." Supp. R., Vol. 1 at 60 (emphasis added).

In his § 2255 motion, Garcia made two arguments regarding Count 9: (1) § 924(c)(1)(A) applies only where the predicate "crime of violence" is one for which

---

[6] Garcia's request for a COA on this issue also challenges the district court's application of procedural default to Count 6. Because we have overlooked procedural default on the Count 6 issue and affirmed the denial of relief on the merits, we confine our analysis here to Count 9.

[7] Section 1951 is Hobbs Act robbery, and § 1959 is the VICAR (violent crimes in aid of racketeering) statute, which punishes certain types of crimes committed in aid of a racketeering activity, *see* § 1959(a). The indictment contained no separate counts of either Hobbs Act robbery or Kansas aggravated robbery.

a "person may be prosecuted in a court of the United States," § 924(c)(1)(A), but Kansas aggravated robbery is not prosecutable in federal court; and (2) Kansas aggravated robbery "is not categorically a 'crime of violence' within the meaning of § 924(c)(3)(B) per the holding in *Johnson [II]*," R., Vol. II at 141. The district court addressed only the first of these two arguments, concluding it was procedurally defaulted because Garcia could have raised it at trial or on direct appeal. *Id.* at 210. In the alternative, the court determined the argument lacked merit. The court did not address the *Johnson II* component of Garcia's argument regarding Count 9, yet it treated the entirety of the Count 9 argument as procedurally defaulted and did not provide an alternative merits analysis of the *Johnson II* challenge.

In seeking a COA on this issue, Garcia contests only the district court's application of procedural bar to the *Johnson II* part of this issue, faulting the district court for not actually examining whether that part was procedurally barred. He claims that if the court had applied *Johnson II*, it would have found that aggravated robbery under Kan. Stat. Ann. § 5420(b)(1) "is not a crime of violence under 18 U.S.C. § 924(c) after *Johnson [II]*." Aplt. Opening Br. at 7.[8] The thrust of Garcia's appellate argument is that

---

[8] Garcia makes two other arguments based on Count 9's reference to Hobbs Act robbery and § 1959: "Hobbs Act Robbery is not a crime of violence under . . . § 924(c)," and "a violation of 18 U.S.C. § 1959(4) . . . is also not a 'crime of violence['] under . . . § 924(c)." Aplt. Opening Br. at 7. We need not address these arguments because it appears neither Hobbs Act robbery nor § 1959 was the basis for the § 924(c)(1)(A) conviction. As noted, the jury was instructed that to convict Garcia on Count 9, it had to find he committed "aggravated robbery." Supp. R., Vol. 1 at 60. And at the jury-instruction conference, the government commented that "the violent crime [in Count 9] was plead as an aggravated robbery, a *state* aggravated robbery." *Id.*, Vol. 2 at 47 (emphasis added).

11

if § 924(c)(3)'s residual clause is void for vagueness and his conviction for Kansas aggravated robbery is not a crime of violence under § 924(c)(3)'s elements clause, then his Count 9 conviction was based on an act that is not a crime of violence within the meaning of § 924(c)(1)(A).  Because *Davis* has now confirmed that § 924(c)(3)'s residual clause is unconstitutionally vague, we can restate Garcia's argument as follows:  His Count 9 conviction is valid only if, at the time he was convicted, Kansas aggravated robbery was a crime of violence under § 924(c)(3)'s elements clause.

We think reasonable jurists could debate whether the district court's procedural ruling was wrong and whether Garcia has a facially valid claim of the denial of a constitutional right.  We therefore grant a COA on this issue and undertake full consideration of whether Garcia can overcome procedural default of the *Johnson II* part of his Count 9 claim.

### 1. **Procedural default**

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."  *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (internal quotation marks omitted).  We address cause and prejudice in turn, and because we conclude there is cause and prejudice here, we need not consider actual innocence.

### a. **Cause**

Cause excusing procedural default exists where a claim "is so novel that its legal basis was not reasonably available to counsel at the time of the direct appeal."  *United*

12

*States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (brackets and internal quotation

marks omitted)). And we have said that a *Johnson II* claim regarding ACCA's residual

clause is such a claim. *Id.* As Garcia points out, *Johnson II* was decided only eighteen

days before this court issued its decision in his direct appeal. He could have filed a notice

of supplemental authority in his direct appeal, but that would have required broaching a

whole new issue that he did not first present to the district court, and it was then

questionable whether *Johnson II*'s holding that ACCA's residual clause was

unconstitutionally vague extended to other similar residual clauses. Based on the timing

here, it would be unfair to conclude Garcia should have raised his *Johnson II* issue

regarding Count 9 as part of his direct appeal, let alone at trial. Our conclusion is

buttressed by the fact that the source of the constitutional principle relevant to

§ 924(c)(3)'s residual clause is not found in *Johnson II* but in *Davis*, *see* 139 S. Ct.

at 2336 (holding that § 924(c)(3)'s residual clause, "§ 924(c)(3)(B)[,] is

unconstitutionally vague"), which was decided well after Garcia's direct appeal was final.

Indeed, given that it is *Davis* that cements the viability of Garcia's legal theory, which we

earlier endorsed in *Salas*, there is cause to excuse Garcia from not raising this claim at

trial or on direct appeal.

We find unpersuasive the government's argument that this is just a *Johnson I*

claim Garcia could have raised at trial or on direct appeal. As Garcia points out, this

claim relies not only on *Johnson I* but on an extension of *Johnson II* to § 924(c)(3)(B),

because to obtain relief, he must show that the predicate crime for the Count 9 conviction

does not qualify as a crime of violence under § 924(c)(3)'s elements clause or its residual

13

clause.  Absent *Johnson II*, and now *Davis*, a *Johnson I* argument on direct appeal would have failed to show that the predicate crime did not qualify under the residual clause, which was then a novel legal theory.

b. **Prejudice**

We also conclude Garcia would be prejudiced if procedural default bars him from raising his Count 9 issue in his § 2255 motion.  Prejudice exists where the alleged error is one "of constitutional dimensions that worked to [a defendant's] actual and substantial disadvantage." *Snyder*, 871 F.3d at 1128 (internal quotation marks omitted).  If Garcia is correct that Kansas aggravated robbery was not a crime of violence within § 924(c)(3)'s elements clause at the time of his conviction, and given that *Davis*'s holding (that § 924(c)(3)'s residual clause is unconstitutional) is retroactively applicable to cases on collateral review per *Bowen*, 936 F.3d at 1100, then Garcia's Count 9 conviction was "not authorized by law," which "is certainly an actual and substantial disadvantage of constitutional dimensions," *Snyder*, 871 F.3d at 1128 (internal quotation marks omitted).

The assumption in the preceding sentence—that Kansas aggravated robbery was not a crime of violence within the elements clause at the time Garcia was convicted— implicates a number of cases decided during the pendency of this appeal or not addressed in the district court.  And testing the truth of the assumption is intertwined with a merits analysis.  In the district court, neither the government nor the court addressed the merits of this issue, and the government does not address them on appeal.  Rather than seek additional briefing from the parties and decide this issue in the first instance ourselves, we think the better course is to remand to the district court for full development and

14

consideration of the issue, including, if necessary, additional briefing from the parties on how (if at all) the recent developments in the law bear on the issue. Those recent developments include, without limitation, the Supreme Court's decisions in *Davis* and *Stokeling v. United States*, 139 S. Ct. 544 (2019), and a number of our decisions, including, but not limited to, *Bowen*, *United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018) (explaining that at the merits stage of a first § 2255 motion, a movant "must prove that the sentencing court, more likely than not, relied on the residual clause"), and *United States v. Bong*, 913 F.3d 1252, 1259-60 (10th Cir. 2019) (holding that "Kansas convictions for robbery and aggravated robbery do not constitute 'violent felonies' for purposes of the ACCA").

## B. Prosecutorial misconduct

In his § 2255 motion, Garcia argued the judgment should be vacated because the prosecutor elicited false testimony from a key witness knowing it was false, and he failed to correct the false testimony, all in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).[9] The testimony was that of a key witness to the murder, Russell Worthey, who was also charged in the case, and concerned whether he had been promised anything in exchange for his testimony against Garcia. We discussed Worthey's testimony about promises in our opinion deciding Garcia's direct appeal, first in connection with a *Brady*[10] claim, *see*

---

[9] *Napue* requires the prosecution to correct a witness's statement they know is false. *See* 360 U.S. at 269-70.

[10] *Brady v. Maryland*, 373 U.S. 83, 87 (1963), requires the prosecution to disclose material exculpatory evidence.

15

*Garcia*, 793 F.3d at 1203-07, and then in connection with a *Napue* claim, *see id.* at 1207-09.  We rejected both claims.

The district court denied § 2255 relief on this issue, concluding it was procedurally barred because Garcia's arguments "substantially replicate claims that were advanced to, and rejected by[,] the Tenth Circuit in the direct appeal."  R., Vol. II at 209.  Garcia contends procedural bar does not apply because the district court misstated the arguments he raised on direct appeal, and this court "never considered the testimony [he focuses on] under *Napue*."  Aplt. Opening Br. at 14.

We disagree.  In our opinion deciding Garcia's direct appeal, we considered the exact evidence Garcia now focuses on.  *See Garcia*, 793 F.3d at 1204 (detailing a March 15, 2013 meeting between Worthey and one of the prosecutors in Garcia's case, which reflected that Worthey would plead guilty to certain charges and his sentence would "work down from 30" years because the judge "has been very good about following our recommendations in the past").  We determined that the failure to disclose this meeting after Worthey neglected to mention it at Garcia's trial and testified that nobody had promised him anything for his testimony did not constitute a *Brady* violation. *See id.* at 1205-07.  We then considered Garcia's *Napue* claim, which "closely resemble[d his] *Brady* claim," *id.* at 1207, and concluded the district court had not clearly erred in finding either that Worthey had merely forgotten about the meeting and therefore had not committed perjury or that the prosecutor also had simply forgotten about the meeting, *id.* at 1209.  Consequently, we rejected Garcia's *Napue* claim.

16

In light of this, Garcia's arguments fail to persuade us to issue a COA. "Under the law-of-the-case doctrine, courts ordinarily would refuse to reconsider arguments presented in a § 2255 motion that were raised and adjudicated on direct appeal." *United States v. Trent*, 884 F.3d 985, 994-95 (10th Cir. 2018) (brackets and internal quotation marks omitted). We've recognized three very narrow exceptions to this doctrine: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* at 995 (internal quotation marks omitted). But Garcia has not argued that any of the exceptions apply, and we fail to see how any would. Therefore, reasonable jurists could not debate the correctness of the district court's procedural ruling, and the issue is not deserving of encouragement to proceed further. Accordingly, we deny a COA on this issue.

## III. **Conclusion**

We affirm the district court's denial of relief on the Count 6 issue and deny a COA on the prosecutorial-misconduct issue. But we grant Garcia's application to expand the COA with regard to the Count 9 claim, reverse the denial of § 2255 relief on that claim, and remand to the district court for further proceedings consistent with our decision. We also grant Garcia's motion to proceed IFP on appeal, but he remains obligated to pay the full filing and docketing fees to the Clerk of the United States District Court for the

17

District of Kansas. *See* 28 U.S.C. § 1915(a)(1) (permitting litigants to avoid only *prepayment* of such fees).

Entered for the Court


Nancy L. Moritz
Circuit Judge